**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ANTHONY MCCALL on Behalf of Himself and All Others Similarly Situated,** | § § § | |
| **Plaintiff,** | § § | |
| **v.** | § § | **CIVIL ACTION NO. _____** |
| **MAIN EVENT ENTERTAINMENT, INC.,** | § § § | **JURY TRIAL DEMANDED** |
| **Defendant.** | § § | |

## PLAINTIFF'S COLLECTIVE ACTION AND CLASS ACTION COMPLAINT

1.      The case implicates Defendant Main Event Entertainment, Inc.'s ("Defendant" collectively) violations of the Fair Labor Standards Act's ("FLSA") tip credit requirements and the tip credit requirements under the Illinois Minimum Wage Law ("IMWL").  As a result, Defendant has failed to pay its employees at the mandated minimum wage rate for all hours worked.  Plaintiff brings this case as a collective action under the FLSA, 29 U.S.C. 216(b) on behalf of all similarly situated workers as defined below and as a class action under Rule 23 of the Federal Rules of Civil Procedure on behalf of all similarly situated workers as defined below.

## SUMMARY OF ACTION

2.      Defendant pays its tipped employees, including servers and bartenders, below the minimum wage rate by taking advantage of the tip-credit provision of the FLSA and IMWL. Under the tip-credit provision, an employer of tipped employees may, under certain circumstances, pay its employees less than the minimum wage rate by taking a "tip credit" against the minimum wage requirement based upon the amount of tips the employees received from customers. *See, e.g., Pedigo v. Austin Rumba, Inc.*, 722 F. Supp. 2d 714, 721 (W.D. Tex. 2010).

1

3. However, there are strict requirements for an employer to utilize the "tip credit." *See* 29 U.S.C. 203(m). An employer must advise an employee in advance of its use of the tip credit pursuant to the provisions of section 3(m) of the FLSA. *See id*. stating (the tip credit provision "shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection."). That is, the employer must inform the employee of the requirements under the FLSA, including: (1) the amount of the cash wage that is to be paid to the tipped employee; (2) the amount by which the wages of the tipped employee are increased on account of the tip credit; (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool; (4) that the worker must receive a minimum "tip credit" hourly rate for all hours worked, and (5) that the tip credit shall not apply to any employee who does not receive the notice.

4. Further, it is illegal for employers to require tipped employees to give up a portion of their tips to their employer or to ineligible employees, such as kitchen staff. *See, e.g., Bernal v. Vankar Enter., Inc*., 579 F. Supp. 2d 804, 810 (W.D. Tex. 2008); *see also Myers v. Copper Cellar Corp*., 192 F.3d 546, 551 (6th Cir. 1999) (for "the work shifts in which salad mixers were included within the tip pool, the pooling scheme was illegal..."). "Where a tipped employee is required to contribute to a tip pool that includes employees who do not customarily and regularly receive tips, the employee is owed the full $7.25 minimum wage and reimbursement of the amount of tips that were improperly utilized by the employer." DOL Fact sheet #15, https://www.dol.gov/whd/regs/compliance/whdfs15.pdf

5. Additionally, an employer must pay the minimum statutory hourly rate ($2.13 per hour under the FLSA and $7.80 under the IMWL).

6.      Moreover, an employer cannot pay below the minimum wage to tipped employees and require those tipped employees to perform non-tipped work that is unrelated to the tipped occupation. *See, e.g., Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1075 (7th Cir. 2014) (explaining that when tipped employees perform "non-tipped duties" that "are unrelated to their tipped duties…such as, in the case of restaurant servers, washing dishes, preparing food, mopping the floor, or cleaning bathrooms, they are entitled to the full minimum wage for the time they spend at that work."); *Romero v. Top-Tier Colorado LLC*, 849 F.3d 1281, 1285 (10th Cir. 2017); *Osman v. Grube, Inc.,* No. 16-CV-802, 2017 WL 2908864, at *4 (N.D. Ohio July 7, 2017)(employer may not take a tip credit for the time that a tipped employee spends on work that is not related to the tipped occupation); *Roussell v. Brinker Intern., Inc.,* No. 05 Civ. 3733, 2008 WL 2714079, at *12 (S.D. Tex. July 9, 2008) ("An employer may take a tip credit for an employee that works 'dual jobs,' but only for the time the employee spends working in his "tipped employee" capacity.") (quoting 29 C.F.R. 531.56(e)).

7.      Finally, an employer cannot require its tipped employees to perform non-tipped work that is related to the employees' tipped occupation but exceeds 20 percent of the employees' time worked or for a consecutive period of 30 minutes or more. *See, e.g., Driver v. AppleIllinois, LLC*, No. 06 Civ. 6149, 2012 WL 3716482, at *2 (N.D. Ill. Aug. 27, 2012) ("An employer may take a tip credit only for hours worked by [an] employee in an occupation in which [he] qualifies as a tipped employee."); *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 880 (8th Cir. 2011) ("employees who spend 'substantial time' (defined as more than 20 percent) performing related but nontipped duties should be paid at the full minimum wage for that time."); *Marsh v. J. Alexander's, LLC,* 905 F.3d 610, 626-28 (9th Cir. 2018) (adopting 20% standard for dual jobs regulation and finding the DOL's opinion on dual jobs for tipped workers to be entitled to deference); *Flood v. Carlson*

*Restaurants, Inc.*, No. 13 Civ. 6458 (AT), 2015 WL 1396257 (S.D.N.Y. Mar. 27, 2015) (denying

Defendant's motion to dismiss explaining that the 20% standard is a reasonable interpretation of

the FLSA and ultimately granting 216(b) notice); *Ide v. Neighborhood Restaurant Partners, LLC*,

No. 13 Civ. 509 (MHC), 2015 WL 11899143, at *6 (N.D. Ga., 2015) (". . . a reasonable

interpretation of § 531.56(e) is that [plaintiff] would be entitled to minimum wage if she spends

more than twenty percent of her time performing related but non-tipped duties."); *Crate v. Q's*

*Restaurant Group LLC*, 2014 WL 10556347, at *4 (M.D. Fla., 2014) ("[T]he Court concludes that

the 20% rule clarifies the ambiguity contained in 29 C.F.R. § 531.56(e) by delineating how much

time a tipped employee can engage in related, non-tip-producing activity before such time must be

compensated directly by the employer at the full minimum wage rate.").

8. Defendant violated the FLSA in the following respects:

    a. **Violation for failure to inform:** Defendant failed to correctly inform Plaintiff of the desire to rely on the tip credit to meet its minimum wage obligations. In fact, Defendant failed to inform Plaintiff of the following: (1) the amount of the cash wage that is to be paid to the tipped employee; (2) the amount by which the wages of the tipped employee are increased on account of the tip credit; (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool; (4) that the hourly rate paid cannot drop below the minimum tipped wage rate, and (5) that the tip credit shall not apply to any employee who does not receive the notice.

    b. **Violation for performing work unrelated to tipped occupation:** Plaintiff was required to perform improper types, and excessive amounts, of non-tipped work, including, but not limited to cleaning bathrooms, taking out trash, washing silverware, dishes, and glasses, cleaning floors, and other cleaning tasks.

    c. **Violation for performing non-tipped side work in excess of 20% of the time spent working in the week or for a continuous period of time during a shift**: Plaintiff was required to spend greater than 20% of his time and/or more than 30 consecutive minutes performing non-tip producing side work, including, but not limited to setting up tables, refilling condiments, rolling silverware, making tea and coffee, and setting up fountain machines, amongst other duties.

9.      As a result of these violations, Defendant has lost the ability to use the tip credit and therefore must compensate Plaintiff and all similarly situated workers at the full minimum wage rate, unencumbered by the tip credit, for all hours worked.  In other words, Defendant must account for the difference between the wages paid to Plaintiff and all similarly situated workers and the minimum wage rate.

## SUBJECT MATTER JURISDICTION AND VENUE

10.     This court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 as this case is brought under the laws of the United States, specifically the FLSA, 29 U.S.C. § 216(b), *et. seq*. This Court also has supplemental jurisdiction over the state law claims raised herein pursuant to 28 U.S.C. § 1367 because those claims do not raise novel or complex issues of state law and because those claims derive from a common nucleus of operative facts from which the FLSA claims stated herein derive.  Namely, the failure of Defendant to pay the minimum wage due to a common pay practice of requiring its tipped workers to perform work unrelated to their jobs as tipped employees and to perform non-tipped work for an excessive period of time.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to this claim occurred in this district, including many of the wrongs herein alleged.  In particular, Plaintiff worked in this District and was denied wages in this District.

## PARTIES AND PERSONAL JURISDICTION

12.     Plaintiff is an individual who worked for Defendant in Warrenville, Illinois.  His written consent to this action is attached hereto as Exhibit "A."

13.     The FLSA Class Members are all current and former tipped employees who worked

for Defendant for at least one week during the three-year period prior to the filing of this action to

the present.

14.     The Illinois Class Members are all current and former tipped employees who worked

for Defendant for at least one week in Illinois during the three-year period prior to the filing of this

action to the present.

15.     The FLSA Class Members and the Illinois Class Members shall be collectively

referred to as the "Class Members."

16.     Defendant Main Event Entertainment, Inc. is a foreign corporation doing business in

Illinois.  Said Defendant may be served process by serving its registered agent – Capital Corporate

Services, Inc. at 1315 W. Lawrence Ave., Springfield, IL 62704.

17.     Personal jurisdiction exists over Defendant because Defendant has purposefully

availed itself of the privileges of conducting activities in Illinois and established minimum contacts

sufficient to confer jurisdiction.  Defendant does business in Illinois, employs residents of Illinois,

advertises in Illinois, markets to Illinois customers, and Plaintiff was denied the wages owed to

him in Illinois.  Therefore, the assumption of jurisdiction over Defendant will not offend traditional

notions of fair play and substantial justice and is consistent with the constitutional requirements of

due process.  Defendant also has had and continues to have continuous and systematic contacts

with Illinois sufficient to establish general jurisdiction over it.

## COVERAGE

18.     At all material times, Defendant has been an employer within the meaning of the

FLSA.  29 U.S.C. § 203(d).

19.     At all material times, Defendant has been an enterprise in commerce or in the production of goods for commerce within the meaning of the FLSA.  29 U.S.C. § 203(s)(1).

20.     At all material times, Defendant has enjoyed yearly gross revenue in excess of $500,000.

21.     At all material times, Plaintiff was an employee engaged in the commerce or the production of goods for commerce.

22.     At all material times, Plaintiff was an employee as defined by the IMWL, section 105(3)(d).

23.     At all material times, Defendant was an employer as defined by the IMWL, section 105(3)(c).

**FACTS**

24.     Defendant operates a nationwide chain of sports and entertainment restaurants under the trade name "Main Event" across the country.  Specifically, Defendant operates in Alabama, Arizona, Arkansas, Colorado, Florida, Georgia, Illinois, Kansas, Kentucky, Louisiana, Maryland, Missouri, New Mexico, Ohio, Texas. (*See* https://www.mainevent.com/locations/#location-list, last visited July 26, 2023).

25.     Defendant offers a full menu of food options, drink options, and the ability to play games, including bowling, air hockey, and laser tag.  To provide it services, Defendant employs servers and bartenders.

26.     A server gathers orders from customers and delivers food and drinks to the customers.  A server is paid an hourly wage by Defendant and receives tips from customers.  A bartender prepares and serves drinks to customers.  A bartender is paid an hourly wage by Defendant and receives tips from customers.

27.     However, Defendant paid these tipped workers less than the minimum wage.

28.     Defendant attempted to utilize the tip credit to meet its minimum wage obligation to its tipped workers, including the Plaintiff and Class Members.

29.     Plaintiff worked for Defendant in Warrenville, Illinois.  He worked as a server and was paid less than the federal minimum wage.  Plaintiff worked for Defendant during the past three years.  He worked from approximately August 2021 to February 2022.  He was paid an hourly rate below the minimum wage of approximately $7.00 per hour.

30.     The tip credit has a harmful effect on workers that threatens the health of the economy.  Adasina Social Capital, a company representing investors with more than $538 billion in assets, has issued a letter large corporations operating restaurants advising of the ills of using the tip credit. (*See* https://adasina.com/investor-statement-in-support-of-ending-the-subminimum-wage/, last visited July 26, 2023).  The letter states as follows:

> Tipped workers are the largest group paid a subminimum wage and represent approximately six million people in the United States. The restaurant industry by far employs the largest number of tipped workers, representing 13.6 million people.
>
> **Frozen at $2.13 per hour, a tipped subminimum wage worker can be paid as little as $4,430 per year for full-time work. As a result, in the 42 states that allow payment of a subminimum wage, tipped workers are more than twice as likely to live in poverty, and the rates are even higher for women and people of color.** The subminimum wage for tipped workers has risen little since it was enacted following the emancipation of slavery, a time when employer trade associations pushed to recoup the costs of free, exploited labor.

(*Id.*) (emphasis in original)

31.     Given the harmful effects of the tip credit, there are strict requirements that must be met by an employer who seeks to utilize the trip credit to meet its minimum wage obligations.

32.     In this case, Defendant did not satisfy the strict requirements to use the tip credit. Defendant maintained a policy and practice whereby they failed to provide the Plaintiff and the

Class Members with the statutorily required notice regarding (1) the amount of the cash wage that is to be paid to the tipped employee, (2) the amount by which the wages of the tipped employee are increased on account of the tip credit, (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool, (4) that the hourly wage paid to the Plaintiff and Class Members could not be lower than the minimum tipped wage, (5) that they cannot pay for any work related expenses, and (6) that the tip credit shall not apply to any employee who does not receive the notice, amongst other violations.

33.     Defendant also maintained a policy and practice whereby tipped employees were required to perform non-tip producing side work unrelated to the employees' tipped occupation. As a result, Plaintiff and the Class Members were engaged in dual occupations while being compensated at the tip credit rate.  While performing these non-tip generating duties, they did not interact with customers and could not earn tips.

34.     These duties include but are not limited to the following: cleaning bathrooms, taking out trash, washing silverware, dishes, and glasses, and cleaning floors, amongst other activities that were not related to their tipped occupation.

35.     Defendant also maintained a policy and practice whereby tipped employees were required to spend a substantial amount of time, in excess of 20 percent and/or for consecutive periods of time of more than 30 minutes, performing non-tip producing side work related to the employees' tipped occupation.

36.     Specifically, Defendant maintained a policy and practice whereby tipped employees, were required to spend a substantial amount of time performing non-tip producing side work, including, but not limited to setting up tables, refilling condiments, rolling silverware, making tea and coffee, and setting up fountain machines, amongst other non-tip producing duties.

37.     Further, Defendant required Plaintiff and the Class Members to perform non-tip producing work prior to the opening of the restaurant, in the middles of their shifts, and after the restaurants closed.  Indeed, Defendant required the Plaintiff and the Class Members to arrive prior to the restaurants opening for business when there were no customers and no opportunity to earn tips, to perform manual labor cleaning and setup duties.  Likewise, Defendant required the Plaintiff and Class Members to remain at the restaurants after they had closed for business and when there was no opportunity to earn tips, to perform manual labor cleaning duties.  At times, they spent 31 minutes to two hours performing non-tip producing work before the restaurant was open, in the middle of their shifts, and after the restaurant was closed.

38.     However, Defendant did not pay its tipped employees the full minimum wage rate for this work. The duties that Defendant required Plaintiff and the Class Members to perform were duties that are customarily assigned to "back-of-the-house" employees in other establishments, who typically receive at least the full minimum wage rate.

39.     During Plaintiff's and the Class Members' employment, checklists were posted in Defendant's restaurants with numerous non-tipped duties that tipped employees were required to perform, in addition to serving customers.

40.     When the tipped employees performed these non-tipped duties, they usually did not interact with customers and did not have an opportunity to earn tips.

41.     Indeed, Defendant did not have a policy prohibiting tipped employees from performing certain types, or excessive amounts, of non-tipped work.

42.     Defendant did not track or record the amount of time the tipped employees spent performing non-tipped work, even though Defendant were capable of doing so.  Defendant's

timekeeping system was capable of tracking multiple job codes for different work assignments, but Defendant failed to track the specific tasks for Plaintiff or the Class Members.

43.     Defendant uses a point-of-sale system to record hours worked by its tipped employees.  Defendant then analyze the information collected by this system, including the labor costs at each of the restaurants. Defendant's timekeeping system was capable of tracking multiple job codes for different work assignments, but Defendant failed to track the specific tasks for Plaintiff and the Class Members.

44.     In the point-of-sale system, Defendant can create different "clock in" codes that would allow tipped employees to record their time at the full minimum wage when performing non-tipped work.

45.     However, Defendant did not allow its tipped employees to clock-in at the full minimum wage rate when performing the non-tipped work described in this Complaint.

46.     Defendant's managers at the restaurants were eligible to receive bonuses, in part, based on meeting or exceeding certain labor cost targets, which created an incentive to keep the amount paid to tipped employees low.

47.     Because Defendant violated the requirements to claim the tip credit, Defendant lost the right to take a credit toward its minimum wage obligation to Plaintiff and the Class Members.

48.     As such, Plaintiff and the Class Members were not compensated at the mandated minimum wage.

49.     Defendant knew or should have known that its policies and practices violate the law, and Defendant has not made a good faith effort to comply with the FLSA and IMWL. Rather, Defendant acted knowingly, willfully, and/or with reckless disregard of the law carried and continue to carry out the illegal pattern and practice regarding its tipped employees as described

in this Complaint. Defendant's method of paying Plaintiff and the Class Members was not based on a good faith and reasonable belief that its conduct complied with the law.

## DUAL JOBS REGULATION

50.     On November 8, 2018, the Department of Labor issued opinion letter FLSA2018-27 which provided a new standard for interpreting the dual jobs regulation that was different than the "80/20" rule and prior Department of Labor opinion letters and guidance that had existed for the past approximately 30 years.  However, nearly every court to have considered this opinion letter held that the opinion letter was not entitled to any deference given the sudden an unexpected change by the Department of Labor.  *See, e.g., Callaway v. DenOne, LLC*, No. Civ. A. 1:18-cv-1981, 2019 WL 1090346 (N.D. Ohio Mar. 8, 2019); *Cope v. Let's Eat Out, Inc.*, 354 F. Supp. 3d 976 (W.D. Mo. 2019). *Spencer v. Macado's, Inc.*, 399 F. Supp. 3d 545, 552-53 (W.D. Va. 2019); *Flores v. HMS Host Corp.*, No. 8:18-cv-03312-PX, 2019 U.S. Dist. LEXIS 183906 (D. Md. Oct. 23, 2019).

51.     Therefore, the Department of Labor announced its intention to revise the dual jobs regulation found in 29 C.F.R. § 531.56(e) and issued a notice of proposed rule-making on October 8, 2019. (*See* https://www.federalregister.gov/documents/2019/10/08/2019-20868/tip-regulations-under-the-fair-labor-standards-act-flsa).

52.     After soliciting comments, the Department of Labor published its final rule on December 30, 2020, which had an effective date of March 1, 2021. (https://www.federalregister.gov/documents/2020/12/30/2020-28555/tip-regulations-under-the-fair-labor-standards-act-flsa). After delaying the effective date of the Final Rule. (https://www.dol.gov/agencies/whd/flsa/tips), on June 21, 2021, the Department of Labor announced "a notice of proposed rulemaking to limit the amount of non-tip producing work that a

tipped employee can perform when an employer is taking a tip credit." (https://www.federalregister.gov/documents/2021/06/23/2021-13262/tip-regulations-under-the-fair-labor-standards-act-flsa-partial-withdrawal).

53.     After soliciting more comments, the Department of Labor announced on October 28, 2021, the publication of a final rule (Tips Dual Jobs final rule). (https://www.dol.gov/agencies/whd/flsa/tips).

54.     Under the Final Rule, an employer cannot take a tip credit for any of the time spent by a tipped worker performing any non-tipped work that exceeds 30 minutes. That is, when a tipped worker performs non-tipped work for a continuous period of time exceeding 30 minutes, the employer cannot claim the tip credit. This regulation provides additional guidance relating to the existing rule that a worker cannot perform non-tip generating work for excessive periods of time.

55.     Here, Defendant illegally required Plaintiff and the Class Members to perform non-tip producing work for an excessive period of time. That is because Defendant required Plaintiff and the Class Members to perform non-tipped work 31 minutes to two hours before the restaurants were open for business, throughout their shifts, and after they were closed, when the restaurants did not have customers and there was no opportunity to earn tips. During this time, Defendant paid below the minimum wage rate and forced the Plaintiff and Class Members to perform non-tip producing duties, as noted above.

56.     Given that Defendant failed to comply with the requirements to take the tip credit, Defendant have lost the ability to claim the tip credit and owe Plaintiff and the Class Members pay at the full minimum wage rate per hour for all hours they worked for Defendant.

## COLLECTIVE ACTION ALLEGATIONS

57.     Plaintiff brings this action as an FLSA collective action pursuant to 29 U.S.C. § 216(b) on behalf of all persons who were or are employed by Defendant as a tipped worker for at least one week during the three-year period prior to the commencement of this action to the present.

58.     Plaintiff has actual knowledge, through conversations with his co-workers that a collective of similarly situated workers exists who have been subjected to the same policies of Defendant with respect to the payment of the minimum wage.

59.     The FLSA Class Members are similarly situated to Plaintiff in that they share the same duties and were subject to the same violations of the FLSA.

60.     Like Plaintiff, the FLSA Class Members were not given proper notice of the tip credit provisions and performed substantial work that was unrelated to their tip producing duties for a significant period of time.

61.     Moreover, the FLSA Class Members were also subject to deductions and expenses that dropped their compensation below the minimum wage.

62.     Plaintiff and the FLSA Class Members all labored under the same corporate structure, the same corporate policies, the same corporate chain of command, and pursuant to the rules in the same company handbook.

63.     Plaintiff and the FLSA Class Members had the same job descriptions, performed similar duties, used the same point of sale system, and were paid under the same pay system pursuant to companywide policies.

64.     The names and address of the FLSA Class Members of the are available from Defendant's records.  To the extent required by law, notice will be provided to these individuals

by first class mail, email, text message, or by the use of techniques and a form of notice similar to those customarily used in representative actions.

65.     Although the exact amount of damages may vary among the FLSA Class Members in proportion to the number of hours they worked, damages for each individual can be easily calculated using a simple formula.

66.     As such, the class of similarly situated FLSA Class Members is properly defined as follows:

> **All current and former tipped employees who worked for Defendant for at least one week during the three-year period prior to the filing of this action to the present.**

## RULE 23 CLASS ACTION ALLEGATIONS

67.     Plaintiff incorporates by reference the allegations in the preceding paragraphs.

68.     Plaintiff brings his minimum wage claims as a Rule 23 class action on behalf of the following class:

> **All current and former tipped employees who worked for Defendant for at least one week in Illinois during the three-year period prior to the filing of this action to the present.**

69.     Although Plaintiff does not know the precise number of members of the proposed class, Plaintiff believes there are more than 40 individuals that fit into the class.

70.     The members of the class are so numerous that their individual joinder is impractical.

71.     The identity of the members of the class is readily discernible from Defendant's records.

72.     Plaintiff and the proposed class on one hand, and Defendant on the other, have a commonality of interest in the subject matter and remedy sought, namely back wages plus penalties, interest, attorneys' fees and the cost of this lawsuit.

73.     Common questions of law and fact exist to all members of the class. These questions predominate over the questions affecting individual class members. These common legal and factual questions include, but are not limited, to the following:

      a. Whether Plaintiff and the Illinois Class Members were paid less than the applicable minimum wage rate;

      b. Whether Plaintiff and the Illinois Class Members performed work that was unrelated to their jobs at tipped employees;

      c. Whether Plaintiff and the Illinois Class Members spent more than 20% of their time at work in a week or for more than 30 consecutive minutes in a shift performing tip supporting work that did not generate tips; and

      d. Whether Plaintiff and the Illinois Class Members were denied minimum wages under Illinois law.

74.     These and other common questions of law and fact, which are common to the members of the class, predominate over any individual questions affecting only individual members of the class.

75.     Plaintiff's claims are typical of the claims of the classes because Plaintiff was not paid wages in accordance with Illinois law just as it did with other Illinois Class Members.

76.     Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the classes that he seeks to represent. Plaintiff has retained competent counsel, highly experienced in complex class action litigation, and they intend to prosecute this action vigorously. The interests of the class will be fairly and adequately protected by Plaintiff and his counsel.

77.     The class action under Illinois state law is superior to other available means for the fair and efficient adjudication of the state law claims of Plaintiff and the Illinois Class Members. The injuries suffered by each individual class member are relatively small in comparison to the burden and expense of individual prosecution of a complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the classes individually to redress effectively the wrongs done to them; even if the members of the class could afford such individual litigation, the court system could not. Individualized litigation presents the possibility for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and to the court system presented by the complex, legal and factual issues of the case. By contrast, the class action presents far fewer logistical issues and provides the benefits of a single adjudication, economy of scale and comprehensive supervision by a single court.

**CAUSE OF ACTION**

COUNT I

VIOLATION OF THE FAIR LABOR STANDARDS ACT

FAILURE TO PAY THE MINIMUM WAGE

78.     Plaintiff incorporates the preceding paragraphs by reference.

79.     This count arises from Defendant's violation of the FLSA in connection with its failure to pay the minimum wages. *See* 29 U.S.C. § 206.

80.     Plaintiff and the FLSA Class Members were paid hourly rates less than the minimum wage while working for Defendant.

81.     Plaintiff and the FLSA Class Members were not exempt from the minimum wage requirements of the FLSA.

82.     Defendant's failure to comply with the minimum wage requirements of the FLSA, and, in particular, the tip credit requirements, resulted in Plaintiff and the FLSA Class Members being paid less than the minimum wage rate.

83.     Defendant's failure to pay the minimum wage to Plaintiff and the FLSA Class Members, in violation of the FLSA was willful and not based on a good faith belief that its conduct did not violate the FLSA.  29 U.S.C. § 255(a).

COUNT II

VIOLATION OF THE ILLINOIS MINIMUM WAGE LAW

FAILURE TO PAY THE MINIMUM WAGE

84.     Plaintiff incorporates the preceding paragraphs by reference.

85.     This count arises from Defendant's violation of the IMWL in connection with its failure to pay the minimum wages.

86.     Plaintiff and the Class Members were paid hourly rates less than the minimum wage while working for Defendant.

87.     Plaintiff and the Class Members were not exempt from the minimum wage requirements of the FLSA.

88.     Defendant's failure to comply with the minimum wage requirements of the IMWL, and, in particular, the tip credit requirements, resulted in Plaintiff and the Class Members being paid less than the minimum wage rate.

89.     Defendant's failure to pay the minimum wage to Plaintiff and the Class Members, in violation of the IMWL was willful and not based on a good faith belief that its conduct did not violate the IMWL.

## JURY DEMAND

90.     Pursuant to his rights under the Constitution of the United States, U.S. CONST. amend

VII, and FED R. CIV. P. 38(a), Plaintiff hereby demands trial by jury.

## PRAYER FOR RELIEF

91.     For these reasons, Plaintiff respectfully requests that judgment be entered in his favor

awarding him and the Class Members:

a.  Unpaid wages;

b.  Liquidated damages;

c.  Statutory penalties;

d.  Reasonable attorney's fees, costs, and expenses of this action;

e.  Pre-judgment interest and post judgment interest; and

f.  Such other and further relief to which Plaintiff and the Class Members may be entitled,

    both in law and in equity.

RESPECTFULLY SUBMITTED,


By:  /s/ Michael L. Fradin
     Michael L. Fradin
     Law Office of Michael L. Fradin
     8401 Crawford Avenue, Suite 104
     Skokie, Illinois 60076
     Phone:  847-644-3425
     Facsimile:  847-673-1228
     mike@fradinlaw.com

AND

Don J. Foty
Hodges & Foty, LLP
2 Greenway Plaza, Suite 250
Houston, TX 77046
Telephone: (713) 523-0001
Facsimile: (713) 523-1116


19

dfoty@hftrialfirm.com

AND

Anthony J. Lazzaro
Ohio Bar No. 0077962
(will apply for admission pro hac
vice)
Lori M. Griffin
Ohio Bar No. 0085241
(will apply for admission pro hac
vice)
The Lazzaro Law Firm, LLC
The Heritage Building, Suite 250
34555 Chagrin Boulevard
Moreland Hills, Ohio 44022
Phone: 216-696-5000
Facsimile: 216-696-7005
anthony@lazzarolawfirm.com
lori@lazzarolawfirm.com

ATTORNEYS FOR PLAINTIFF AND CLASS MEMBERS