**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ANTHONY MCCALL, on behalf of himself** | ) | |
| **and all others similarly situated,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 1:23-cv-04892** |
| **vs.** | ) | |
| | ) | **Judge Elaine E. Bucklo** |
| **MAIN EVENT ENTERTAINMENT, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**UNOPPOSED MOTION FOR APPROVAL OF FAIR LABOR STANDARDS ACT**
**COLLECIVE ACTION SETTLEMENT**

Named Plaintiff Anthony McCall respectfully moves this Honorable Court to approve the proposed settlement reached by the Parties and memorialized in the Confidential Compromise Settlement Agreement and Release (hereinafter "Settlement" or "Agreement").[1] Plaintiff respectfully requests that the Court enter an Order approving the Settlement as fair and reasonable. Defendant consents to the relief requested in this Motion and joins in asking that the Court approve the Settlement.

## I. INTRODUCTION

The Parties seek approval of the proposed Fair Labor Standards Act ("FLSA") collective action Settlement. The proposed Settlement will resolve a *bona fide* dispute involving unpaid wage claims under the FLSA. Because the proposed Settlement is an FLSA settlement for employees who affirmatively elect to participate, as opposed to a Rule 23 opt-out settlement that would bind absent class members, no fairness hearing is required or requested by the Parties. The Parties respectfully submit that the proposed Settlement is fair and reasonable and satisfies the

---

[1] The Settlement Agreement has been emailed directly to the Court per Dkt. 50.

criteria for approval under § 216(b) of the FLSA. The following sections explain the nature of the lawsuit, the negotiations, the Settlement's principal terms, and the propriety of approving the Settlement.

## II.    BACKGROUND

### A.    <u>Summary of Case</u>

On July 26, 2023, Plaintiff Anthony McCall filed this collective action lawsuit related to his employment at Main Event. (Dkt. 1).  Specifically, this lawsuit alleges that Plaintiff was paid at an hourly rate less than the minimum wage when it was unlawful to do so. (*See id*.)  Under the FLSA, all non-exempt employees are required to be paid at an hourly rate that is no less than the minimum wage. *See, e.g.,* 29 U.S.C. § 206.  However, Plaintiff asserted that Defendant paid Plaintiff less than the minimum wage by relying upon a provision in the FLSA that allows an employer of workers who receive tips from customers to claim a credit based upon the tips the employee receives from customers. *See* 29 U.S.C. § 203(m)(2).  However, an employer cannot claim this "tip credit for hours that [are not] tip-credit eligible." *Romero v. Top-Tier Colorado LLC*, 849 F.3d 1281, 1285 (10th Cir. 2017); *Rafferty v. Denny's, Inc.*, 13 F. 4th 1166 (11th Cir. 2021). "In some situations an employee is employed in dual jobs," meaning that the employee has two different jobs. *See* 29 C.F.R. § 531.56(e).  In that situation, no tip credit can be taken for the employee's hours of employment in the occupation that does not generate tips. *See id*.

Additionally, Plaintiff alleges that Defendant required its tipped employees to perform non-tipped work that is related to the employees' tipped occupation but exceeds 20 percent of the employees' time worked or for a consecutive period of 30 minutes or more. *See, e.g., Driver v. AppleIllinois, LLC*, No. 06 Civ. 6149, 2012 WL 3716482, at *2 (N.D. Ill. Aug. 27, 2012) ("An employer may take a tip credit only for hours worked by [an] employee in an occupation in which

2

[he] qualifies as a tipped employee."); *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 880 (8th Cir. 2011) ("employees who spend 'substantial time' (defined as more than 20 percent) performing related but nontipped duties should be paid at the full minimum wage for that time."); *Marsh v. J. Alexander's, LLC,* 905 F.3d 610, 626-28 (9th Cir. 2018) (adopting 20% standard for dual jobs regulation and finding the DOL's opinion on dual jobs for tipped workers to be entitled to deference).

In December 2021, the Department of Labor issued a revised dual jobs regulation that "essentially codifies the '80/20 guidance' that had appeared in various Department of Labor documents over the past three and a half decades." *Restaurant Law Ctr. v. U.S. Dep't of Labor*, 66 F.4th 593, 596 (5th Cir. 2023). The revised 2021 regulation permitted "an employer to take a tip credit, not only for an employee's tip-producing work, but also for other work that 'directly supports tip-producing work, provided that the employee does not perform that work for a substantial amount of time'" defined as exceeding 20% of the time spent in a week in a tipped position or any period exceeding 30 consecutive minutes. *Id.* (quoting 29 C.F.R. § 531.56(f)(4)).

When Plaintiff filed his lawsuit, he based his claims on the revised 2021 regulation. However, during the pendency of this lawsuit, the Fifth Circuit issued a decision that vacated the revised 2021 regulation. *Restaurant Law Ctr. v. U.S.*, 120 F. 4th 163 (5th Cir. 2024).As a result, Defendant denies Plaintiff's allegations in their entirety, denies liability, and denies that Plaintiff suffered any damages. (Dkt. 22).

**B.** **Investigation, Discovery, and Negotiation of the Settlement**

The Parties engaged in substantial investigation prior to negotiating the Settlement. (*See* Ex. "1" at ¶¶ 18-20.) Plaintiff's Counsel performed research and a factual investigation of the claims. (*Id.*) Plaintiff's Counsel also interviewed several Opt-In Plaintiffs and gathered statements

from them. (*Id.*) Additionally, Plaintiff's Counsel conducted research into the potential damages that could be owed. (*Id.*)

The Parties also engaged in informal discovery, including an exchange of information regarding Plaintiff's claims and Defendant's defenses to such claims. (*Id.* at ¶ 19.) This included the production of data and information regarding the Class Members. (*Id.*) Using that information, Plaintiff's Counsel conducted an analysis of the potential damages that could be owed to Plaintiff, the Opt-In Plaintiffs and the potential Class Members. (*Id.*) For instance, if a Class Member worked on average 20 hours per week, worked 26 weeks, was paid a minimum cash wage of $7.20, and spent 20% of their time at work performing non-tipped work, that Class Member would be owed $499.20 for unpaid minimum wages.

The Parties also engaged in multiple lengthy discussions and correspondence concerning their respective legal and factual positions, and the alleged wage damages. (*Id.* at ¶ 20.) All aspects of the dispute are well-understood, and the legal issues in this case were vehemently argued by both sides. (*Id.*) The many months of settlement negotiations culminated in an agreement to settle the action on the terms set forth in the Settlement Agreement.

### C. <u>The Settlement Terms</u>

The Gross Settlement Amount is $500,000.00, which will cover: (a) all of the settlement payments to the Class Members; (b) Named Plaintiff's Service Award; (c) Plaintiff's Counsel's attorneys' fees and out-of-pocket costs; and (d) Settlement Administration costs. (*See* Settlement Agreement at ¶ 1.6.)

Through this Motion, the Parties ask that the Court approve the Settlement which provides as follows:

- $10,000 for Named Plaintiff's Service Award;

- $166,666.67 for attorney's fees (1/3 of the Settlement);

- $2,011.06 for litigation expenses; and

- Costs related to administering the Settlement.

In addition to the Gross Settlement Amount, Defendant will pay its customary share of all required state and federal on 50% of each Settlement Award distributed. (*Id*. at ¶ 1.6, 4.1.5.)

The Parties respectfully request that the Court approve this Settlement, authorize Notice to the Class Members pursuant to 29 U.S.C. § 216(b) for settlement purposes only, and enter an Order dismissing the lawsuit with prejudice. (*Id.* at 2.2, 2.3.)

### D. Notice Plan

The Parties have agreed that a third-party administrator will be hired to send the Notice of the Settlement and handle the distribution of the payments to the Class Members. (*Id*. at ¶ 1.16.) This Settlement Administrator will send the Notice of Settlement attached to the Settlement Agreement as Exhibit "A" to the Class Members via first class mail, email, and text message. (*Id.* at ¶ 3.2.) The Settlement Class Members will have 60 days from the date of mailing of the Notice of Settlement to return an executed Claim Form to the Settlement Administrator to participate in the Settlement. (*Id.* at 1.11, 3.3.) The Settlement Administrator will issue Settlement Award Checks to each Settlement Class Member who submitted a timely claim form. (*Id.* at 4.1.4.) The rights of any individual who does not return a claim form will be unaffected and that individual will still have the ability to bring his/her own claim.

## III. THE SETTLEMENT SHOULD BE APPROVED

The Parties seek approval of their proposed Agreement to settle this action pursuant to Section 216(b) of the FLSA. "Stipulated agreements in a FLSA case must be approved by the Court." *Burkholder v. City of Ft. Wayne*, 750 F. Supp. 2d 990, 994-95 (N.D. Ind. 2010); *see*

*also Winking v. Smithfield Fresh Meats Corp.*, No. 1:22-CV-01937, 2022 WL 16706898, 2022 U.S. Dist. LEXIS 202644, *1 (N.D. Ill. Nov. 4, 2022). Because the proposed Settlement is an FLSA settlement—as opposed to a Rule 23 opt-out settlement that would bind absent class members—no fairness hearing is requested by the Parties, nor is the Court required to hold one. Instead, **"[a] one-step settlement approval process is appropriate in collective actions brought pursuant to the FLSA."**. *Bainter v. Akram Invs., LLC*, No. 17 C 7064, 2018 WL 4943884, 2018 U.S. Dist. LEXIS 177445, at *5 (N.D. Ill. Oct. 9, 2018); *Koszyk v. Country Fin. a/k/a CC Servs., Inc.,* No. 16 Civ. 3571, 2016 WL 5109196, 2016 U.S. Dist. LEXIS 126893, *2 (N.D. Ill. Sept. 16, 2016); *Briggs v. PNC Fin. Servs. Grp., Inc*, No. 1:15-cv-10447, 2016 WL 7018566, 2016 U.S. Dist. LEXIS 165560, at *3 (N.D. Ill. Nov. 29, 2016); *see also Winking*, 2022 U.S. Dist. LEXIS 202644, *1 ("There is no need to require that the settlement provide for opt-outs or objections where individuals are not part of the settlement unless they decide to participate in it."); *Prena v. BMO Fin. Corp.*, No. 14-09175, 2015 WL 2344949, 2015 U.S. Dist. LEXIS 65474, *1 (N.D. Ill. May 15, 2015) ("One step is appropriate because this is an FLSA collective action, where collective members must affirmatively opt-in in order to be bound by the settlement (including the settlement's release provision)."). "If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement." *Castillo v. Noodles & Co.*, No. 16-cv-03036, 2016 WL 7451626, 2016 U.S. Dist. LEXIS 178977, *2 (N.D. Ill. Dec. 23, 2016). Courts in the Northern District of Illinois have routinely approved such "one-step" FLSA settlements. *See, e.g.*, *Ceniceros v. PACTIV, LLC*, No. 18-CV-1759, 2019 WL 13252838, 2019 U.S. Dist. LEXIS 248194, at *1 (N.D. Ill. Jan. 17, 2019); *Bainter v. Akram Invests, LLC*, No. 17 C 7064, 2018 WL 4943884, 2018 U.S. Dist. LEXIS 177445, *1 (N.D. Ill. Oct. 9, 2018); *Furman v. At Home Stores, LLC*, 2017 WL 1730995, 2017 U.S. Dist. LEXIS 73816, *1 (N.D. Ill. May 1, 2017); *Briggs*, 2016

U.S. Dist. LEXIS 165560, *1; *Castillo*, 2016 U.S. Dist. LEXIS 178977, *1; *Prena v. BMO Fin. Corp.*, 2015 U.S. Dist. LEXIS 65474, *1.

        **A.**      <u>**The Settlement is a fair and reasonable resolution of a *bona fide* dispute.**</u>

"It is a well settled principle that the law generally encourages settlements." *Koszyk*, 2016 U.S. Dist. LEXIS 126893, *2 (quoting *Dawson v. Pastrick*, 600 F.2d 70, 75 (7th Cir. 1979)). "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Id.* (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982). "The existence of a *bona fide* dispute serves as a guarantee that the parties have not manipulated the settlement process to permit the employer to avoid its obligations under the FLSA." *Andrus v. DenOne, LLC*, No. 1:19-cv-00259-PAB, 2019 WL 13195500, 2019 U.S. Dist. LEXIS 244181, *3 (N.D. Ohio Nov. 22, 2019).

Here, a *bona fide* dispute certainly exists. In fact, there are several issues in material dispute—the outcome of which remains uncertain—that could significantly impact this case if it were further litigated. (Ex. "1" at ¶¶ 25-31.) The Parties dispute, *inter alia*, whether Defendant violated any wage and hour law; whether Plaintiff was paid less than the minimum wage; the amount of time Plaintiff spent performing non-tipped work and whether it was *de minimis*; and whether this case is appropriate for collective treatment. (*Id.* at ¶ 25.) Moreover, while Defendant contends that Plaintiff could not succeed on the merits, even if he could, the Parties dispute whether Defendant has a good faith defense that would preclude an award of liquidated damages, and whether Defendant's conduct was willful, and thus, whether the 2-year or 3-year statute of limitations applies. (*Id.*)

Moreover, all other relevant factors favor approval.

First, the complexity, expense, and likely duration of continued litigation favors approval.

"Wage-and-hour collective and class actions are, by their very nature, complicated and time-consuming." *Swigart v. Fifth Third Bank*, 1:11-cv-88, 2014 WL 3447947, 2014 U.S. Dist. LEXIS 94450, *18 (S.D. Ohio July 11, 2014) (citing *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 479-80 (S.D.N.Y. 2013)). This case is certainly no exception. As discussed above, several factual and legal issues are in dispute in this case, and if forced to litigate this case further, the Parties would certainly engage in complex, costly, and protracted litigation. (*Id*. at ¶ 27.) The Parties would be required to engage in extensive formal discovery, which would be expensive and time-consuming given the continued factual and legal disputes between the Parties. (*Id*.) The Parties would also be required to engage in extensive briefing on conditional certification, decertification, and dispositive motions. (*Id*.) Moreover, if this case ultimately went to trial, the trial would be complex and factually intensive with respect to both liability and damages, and any final judgment would likely be appealed. (*Id*.)

Second, the stage of proceedings favors approval, as the settlement resulted from informed negotiations between experienced counsel who fully appreciated the merits and risks of this case. (*Id*. at ¶ 28.) Prior to negotiating the settlement, the Parties conducted research and informal discovery. (*Id*.) This included an exchange of information, which Plaintiff's Counsel fully analyzed and used to prepare an analysis of the potential damages. (*Id.*) Moreover, the legal issues in the case were thoroughly researched and argued by competent counsel with extensive experience litigating wage and hour collective actions. (*Id.*) The settlement was reached only after counsel engaged in extensive arms-length settlement negotiations.

Third, the risks of establishing liability favors approval. Counsel for both sides believe in the merits of their clients' positions but nonetheless recognize that further litigation is uncertain in terms of duration, cost, and result. (*Id*. at ¶ 29.) Continued litigation would be risky for all and at

8

each stage, including conditional certification, decertification, summary judgment, and trial. (*Id*.) If a jury or the Court were to find that the non-tip producing time was *de minimis* or that Defendant was entitled to take advantage of the tip credit for the non-tip producing work, Plaintiff and the Class Members could be entitled to no recovery. (*Id*.)

Fourth, the risk of establishing damages favors approval. (*Id*. at ¶ 30.) Again, if the Court or jury determined that the alleged non-tip producing work time was *de minimis* or that Defendant was entitled to take advantage of the tip credit for the non-tip producing work, there would be no recovery. (*Id*.) Moreover, even if Plaintiff were to succeed on the merits, the Court or a jury could find that Defendant did not act willfully, and thus a two-year statute of limitations would apply, which would cause certain individuals to be dismissed (as their damages are not within the two-year statute of limitations), and would lessen the damages of those whose employment includes time within the 3-year statute of limitations. (*Id*.) Further, even if Plaintiff succeeded on the merits and the 3-year statute of limitations applied, the Court or a jury could find that Plaintiff spent less time performing the alleged work than that which was recovered in this Settlement. (*Id*.) In short, all of these scenarios would result in a monetary award of less than the amount obtained through this Settlement.

Fifth, the range of reasonableness of the settlement in light of the possible recovery and all the risks of litigation favors approval. As noted above, a *bona fide* dispute exists as to whether Defendant has any liability in this case. The outcome of further litigation is uncertain, and the risks of continued litigation are evident for both sides. (*Id*. at ¶ 31.) The Settlement, on the other hand, guarantees a substantial recovery promptly and efficiently without the attendant risks and delay of continued litigation and appeals. (*Id*.) The Gross Settlement Amount equals approximately 63% of the total wages allegedly owed to Plaintiff and the Class Members, using the analysis of 20 hours

per week, an average duration of 26 weeks, and 20% of the time worked in a week was spent performing non-tipped work. Defendant disputes that any damages are owed. (*Id*.)

Additionally, all components of the proposed distribution are proper and reasonable. (*Id*. at ¶ 32.) The amounts of the individual settlement checks will be calculated proportionally based upon the number of weeks worked by each Class Member. (*Id*.) Moreover, the release of claims for the Class Members is limited to a wage and hour release and not a general release of all possible claims. (*Id*.) Further, the release will only be binding upon those individuals who affirmatively elect to participate after receiving the Settlement Notice, which defines the release to which they will be subjected by cashing their check, as well as their check containing an endorsement that expressly informs them that by endorsing and negotiating the check and accepting payment, they are "releasing any and all state, local, and federal wage claims, obligations, demands, actions, rights, causes of action and liabilities, whether known or unknown, against the Released Parties (as defined in Confidential Settlement Agreement and Release)." (*See* Settlement Agreement at ¶ 4.1.6.)

Accordingly, the Settlement is a fair and reasonable resolution of a *bona fide* dispute.

**B.    Plaintiff's Counsel's Attorneys' Fees and Expenses should be approved.**

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). The attorney's fees provision of the FLSA exists to enable plaintiffs to employ reasonably competent lawyers without cost to themselves if they prevail, and thereby to help ensure enforcement of the substantive provisions of the Act. 29 U.S.C. §216(b). The provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally

identified policies and rights." *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994) (quotation omitted). Moreover, "[p]roportionality between fees and damages is not required." *Okoro v. Pyramid 4 Aegis*, No. 11-C-267, 2012 WL 12356838, 2012 U.S. Dist. LEXIS 191106, at *14 (E.D. Wis. Nov. 15, 2012). "To hold otherwise would in reality prevent individuals with relatively small claims from effectively enforcing their rights." *Hodgson v. Miller Brewing Co.,* 457 F.2d 221, 228-29 (7th Cir. 1972).

Attorney's fees may be determined using either the percentage of the fund method or the lodestar method. *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 566 (7th Cir. 1994). However, "[t]he Seventh Circuit has endorsed the percentage-of-recovery method as the best way to calculate attorneys' fees when a settlement provides that class counsel will be paid from the settlement fund." *Martin v. Lexington Health Care Center of Chicago Ridge, Inc*., No. 13 C 0832, 2015 WL 14073005, 2015 U.S. Dist. LEXIS 202080, at *11 (N.D. Ill. Mar. 5, 2015) (citing *Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998). "In deciding fee levels in common fund cases, [the Seventh Circuit has] consistently directed district courts 'to do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time.'" *Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007). "The Seventh Circuit has instructed district courts to award attorneys' fees that approximate the market rate." *Winking*, 2022 U.S. Dist. LEXIS 202644, *6. In this case, Plaintiff's counsel is seeking a percentage of the total settlement amount for attorneys' fees, and thus, the market rate for the legal services provided by Plaintiff's counsel is a contingency fee. *See Kirchoff v. Flynn*, 786 F.2d 320, 324 (7th Cir. 1986). The Seventh Circuit has recognized that "most suits for damages in this country are handled on the plaintiff's side on a contingent fee basis" and that the "typical contingent fee is between 33 and 40 percent." *Gaskill*, 160 F.3d at 362 (approving 38% fee award).

11

Here, the proposed payment of attorneys' fees—which equals 33.33% of the Gross Settlement Amount—is consistent with the market rate and within the range of reasonableness. *See, e.g.*, *Sanchez v. Roka Akor Chicago LLC*, No. 14-cv-4645, 2017 WL 1425837, *6 (N.D. Ill. Apr. 20, 2017) (approving attorneys' fees in an amount equal to 39.5% of common fund as "consistent with the market in the Northern District of Illinois"); *Lampos v. David Mason & Assoc., Inc.*, Case No. 1:21-cv-01264, (N.D. Ill.) (approving attorney's fees equal to 40% of common fund; *Sellers v. Exelon Corp.*, Case No. 1:18-cv-07179 (N.D. Ill.) (approving attorney's fees equal to 37.5% of common fund).

Moreover, the attorneys' fees requested are certainly reasonable considering the substantial benefit achieved for the Plaintiff and Settlement Class Members. Thus, the Settlement in this case "greatly exceeds the typical 7-11% recovery in FLSA cases." *Smith v. SAC Wireless, LLC*, 2022 WL 1744785, 2022 U.S. Dist. LEXIS 96760, *9 (E.D. Mich. May 31, 2022) (citing *Dillworth v. Case Farms Processing, Inc.*, 2010 WL 776933, *8 (N.D. Ohio Mar. 8, 2010) (citing Frederick C. Dunbar, Todd S. Foster, Vinita M. Juenja, Denise N. Martin, Recent Trends III: What Explains Settlements in Shareholder Class Actions? (National Economic Research Assocs. June 1995).

The complexity of this litigation also favors approval of the requested fees. Again, wage-and-hour collective actions are, by their nature, complicated and time-consuming, and "society has a stake in rewarding the efforts of the attorneys who bring wage and hour cases, as these are frequently complex matters." *Gentrup v. Renovo Servs., LLC*, 2011 WL 2532922, 2011 U.S. Dist. LEXIS 67887, *14 (S.D. Ohio, June 24, 2011). If forced to further litigate, the Parties would be required to engage in extensive formal discovery and briefing regarding motions for conditional certification, summary judgment, and decertification, any trial of this matter would be complex with respect to both liability and damages, and a final judgment may be appealed. (Ex. "1" at ¶

40.)

Further, Plaintiff's Counsel undertook representation on a contingent-fee basis, and expended significant time and effort and advanced costs and expenses, without any guarantee of compensation. (*Id*. at ¶ 38.) Thus, the attorneys' fees in this case were entirely contingent upon the success of this litigation and should not be altered because counsel efficiently resolved this case rather than prolonging the litigation and increasing the potential costs. *See* Manual for Complex Litigation (4th) § 14.121 ("one purpose of the percentage method is to encourage early settlements by not penalizing efficient counsel, thus ensuring competent counsel continue to be willing to undertake risky, complex, and novel litigation."). Had this case not settled, Plaintiff's Counsel would have vigorously litigated the case without any promise of the success they achieved in reaching the settlement. (Ex. "1" at ¶ 39.)

Furthermore, the services rendered to the Plaintiff and Settlement Class Members reflect the substantial experience Plaintiff's Counsel has with litigating collective and class actions, as explained in the Declaration attached hereto.

In addition, the litigation expenses sought to be reimbursed are also proper and reasonable. During the course of the litigation of this action, Plaintiff's Counsel has incurred expenses in the amount of $2,011.06. (*Id*. at ¶ 37)  This amount is a relatively modest amount, which demonstrates Plaintiff's Counsel's efforts to keep litigation costs down to maximize the recovery to the Class Members.  Accordingly, the requested payment for attorneys' fees and expenses should be approved.

### C.    The Service Award to Named Plaintiff should be approved.

Service awards are routinely given to representative plaintiffs in class and collective actions. *See Briggs*, 2016 U.S. Dist. LEXIS 165560, *6. Such awards "serve the important purpose

13

of compensating plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant and any other burdens sustained by the plaintiffs." *Id*.; *Koszyk*, 2016 U.S. Dist. LEXIS 126893, *5.

Here, the Named Plaintiff, Anthony McCall, provided substantial and effective services in this case, which has been in litigation for approximately two years. (Ex. "1" at ¶ 35.)  Named Plaintiff, *inter alia*, agreed to bring this action in his name, agreed to participate in discovery, provided critical factual information that assisted Plaintiff's Counsel in formulating the claims in this case, engaged in several communications with Plaintiff's Counsel, and provided pertinent information to Plaintiff's Counsel. (*Id*.)

Moreover, Named Plaintiff has risked his employment reputation by subjecting himself to the responsibilities of serving as the only Named Plaintiff in this lawsuit against his former employer. *See Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-CV-516, 2019 WL 6310376, 2019 U.S. Dist. LEXIS 204371, *21 (S.D. Ohio Nov. 25, 2019) ("A worker who advocates for his or her colleagues assumes substantial risk, including the risk that a prospective employer may be hesitant to hire an employee who sued a past employer. Given that employers can find such information through a simple internet search, this risk is very real."); *Guippone v. BH S & B Holdings, LLC*, No. 09 CIV. 01029 CM, 2011 WL 5148650, 2011 U.S. Dist. LEXIS 126026, *20 (S.D.N.Y. Oct. 28, 2011) ("[T]he fact that a plaintiff has filed a federal lawsuit is searchable on the internet and may become known to prospective employers when evaluating the person."); *Edelen v. Am. Residential Servs*., LLC, No. Civ. A. 11-2744, 2013 WL 3816986, 2013 U.S. Dist. LEXIS 102373, *46-47 (D. Md. July 22, 2013 (recognizing risk named plaintiff could face in his future job prospects as a result of his participation in the lawsuit); *Parker v. Jekyll & Hyde Ent. Holdings, L.L.C.*, No. 08 Civ. 7670, 2010 WL 532960, 2010 U.S. Dist. LEXIS 12762, *4 (S.D.N.Y. Feb. 9,

2010) ("The current employees risk termination or some other adverse employment action, while former employees put in jeopardy their ability to depend on the employer for references in connection with future employment."). Service awards "provide an incentive to seek enforcement of the law despite these dangers." *Jekyll & Hyde Ent. Holdings*, 2010 U.S. Dist. LEXIS 12762, *4-5.

Additionally, the requested Service Award of $10,000 is well within the range that courts in this Circuit, including this Court, routinely approve in similar wage and hour cases. *See, e.g.*, *Furman v. At Home Stores LLC*, No. 1:16-cv-08190, 2017 WL 1730995, 2017 U.S. Dist. LEXIS 73816, at *4-5 (N.D. Ill. May 1, 2017) (approving $10,000 service award to representative plaintiff); *Koszyk,* 2016 WL 5109196, *3 (approving $10,000 service payments to each of seven representative plaintiffs in FLSA settlement for a total of $70,000 in service awards); *Briggs*, 2016 U.S. Dist. LEXIS 165560, at * 5 (approving $12,500 service award to two plaintiffs in FLSA settlement for a total of $25,000 in service awards); *Castillo*, 2016 U.S. Dist. LEXIS 178977, at *4 (approving $10,000 service award to each of four plaintiffs in FLSA settlement for a total of $40,00 in service awards). Accordingly, the Service Award to Named Plaintiff should be approved.

IV.    **CONCLUSION**

For the forgoing reasons, the Court should approve the Settlement by entering an Order approving the settlement and dismissing the case.

By: /s/ Don J. Foty
Don J. Foty
Foty Law Group
2 Greenway Plaza, Suite 250
Houston, TX 77046
Telephone: (713) 523-0001
Facsimile: (713) 523-1116
dfoty@fotylawgroup.com

15

AND

Michael L. Fradin
Law Office of Michael L. Fradin
8401 Crawford Avenue, Suite 104
Skokie, Illinois 60076
Phone:  847-644-3425
Facsimile:  847-673-1228
mike@fradinlaw.com

AND

Anthony J. Lazzaro
Ohio Bar No. 0077962
Lori M. Griffin
Ohio Bar No. 0085241
The Lazzaro Law Firm, LLC
The Heritage Building, Suite 250
34555 Chagrin Boulevard
Moreland Hills, Ohio 44022
Phone: 216-696-5000
Facsimile: 216-696-7005
anthony@lazzarolawfirm.com
lori@lazzarolawfirm.com

ATTORNEYS FOR PLAINTIFF AND CLASS MEMBERS